UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:01-cr-151-MOC-DCK-1

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Vs.** | ) | ORDER |
| | ) | |
| | ) | |
| **CHRISTOPHER QUINN MOSES,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release/Reduction of Sentence, in which Defendant seeks an order reducing the term of imprisonment to time served with the additional supervised release condition of one-year home confinement. (Doc. No. 213). Defendant is represented by Jared Martin of the Federal Defenders of Western North Carolina, Inc. The Government has responded in opposition to the motion, and Defendant has submitted a Reply.

Also pending is the Government's Motion to Stay, (Doc. No. 222), which the Government filed to allow Defendant time to exhaust his administrative remedies with the Bureau of Prisons, or to allow thirty days to elapse to satisfy the exhaustion period. The thirty-day period has now elapsed.

I.  BACKGROUND

A. Defendant's Criminal History and Pending Motion

Shortly after beginning his term of supervised release for robbing four banks in Charlotte, North Carolina, Defendant participated in four, armed bank robberies again in Charlotte. (PSR at ¶¶ 9-13, 71, 74). Between June 26, 2001, and October 11, 2001, he robbed the banks with several

1

different accomplices. Based on this conduct, Defendant was indicted for bank robbery and aiding and abetting in violation of 18 U.S.C. §§ 2, 2113(a) (Counts 1, 4, 7, 10); armed bank robbery and aiding and abetting in violation of 18 U.S.C. §§ 2, 2113(d) (Counts 2, 5, 8, 11); and carrying and brandishing of a firearm during a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 2, 924(c) (Counts 3, 6, 9, 12). See (PSR at ¶¶ 1-4).

Defendant subsequently pled guilty to four counts of armed bank robbery and one count of brandishing a firearm during a crime of violation. (Doc. No. 90 at ¶ 1 (Plea Agrmt.)). In exchange for Defendant's plea, the Government agreed to dismiss the remaining counts against him, which included counts that would have carried a mandatory consecutive 75-year sentence, and not to prosecute his sister, Kimberly Moses. (Id. at ¶¶ 1–2).

In April 2003, this Court sentenced Defendant to a total of 300 months imprisonment. He has served approximately 18 years and ten months of his 25-year sentence, and he is currently 46 years old. BOP has determined his home detention eligibility date to be May 3, 2023, with a projected release date of November 3, 2023. See (Def. Ex. 1). Defendant is currently incarcerated at USP Allenwood in Allenwood, Pennsylvania.

Defendant filed the pending motion through counsel on August 13, 2020. In support, he contends that "extraordinary and compelling" reasons exist that support his release because his preexisting medical conditions—including sarcoidosis, immunosuppression, asthma, and high blood pressure—placed him at a great risk of serious illness and death if he is infected with COVID-19.[1]

B. **Defendant's Medical History**

---

[1] Defendant also appears to challenge his career offender designation at sentencing. A challenge to Defendant's career offender designation is more properly brought through a motion to vacate, correct, or set aside sentence under 28 U.S.C. § 2255.

2

Defendant was diagnosed with sarcoidosis in 2003. See (Def. Ex. 2, Medical Evaluation by Dr. Kelly O'Brien; see also Def. Ex. 3, BOP Medical Records). Sarcoidosis is a serious condition of unknown cause in which abnormal nodules of inflammatory cells, known as granulomas, form in various organs, which can affect organ function. Untreated pulmonary sarcoidosis can lead to permanent scarring in lungs (pulmonary fibrosis), making it difficult to breathe and sometimes causing pulmonary hypertension. Defendant's chest x-ray from 2019 shows worsening lung disease, consistent with a chronic interstitial fibrotic pattern. (Def. Ex. 2). To control his sarcoidosis, Defendant is currently prescribed three different medications that suppress his immune system. Defendant argues that he has four of the high-risk pre-existing conditions determined by the CDC for poor outcome for COVID-19, including death: asthma, high blood pressure, three immunosuppressive medications, and long-term facility detention. Id.

## II. DISCUSSION

The relevant part of the compassionate release statute permits this Court "after considering the factors set forth in section 3553(a) to the extent that they are applicable" to reduce Defendant's sentence only if finds that (1) "extraordinary and compelling reasons warrant such a reduction"; "and" (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[2] 18 U.S.C. § 3582(c)(1)(A). The applicable "policy statement" appears

---

[2] Defendant argues that the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify "extraordinary and compelling" circumstances that may warrant a sentence reduction, even if those circumstances deviate from policy statements issued by the Sentencing Commission. In other words, Defendant argues that the Court may determine what constitutes "extraordinary and compelling" reasons, independent of what the policy statement defines as "extraordinary and compelling" reasons. The Court does not agree. The First Step Act left unchanged a critical statutory command: any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." As the Fourth Circuit recently recognized, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" United States v. Taylor, 820 F. App'x 229, at *1 (4th Cir. 2020) (citing § 3582(c)(1)(A)). In any event, even if Defendant were correct, this

3

in section 1B1.13 of the Sentencing Guidelines Manual. That section and its commentary describe the "circumstances" under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13 & cmt. (n.1). First, the defendant must not be "a danger to the safety of any other person or to the community." Id. Second, one of four specific circumstances must exist involving, for example, the medical condition of the defendant, his age, his family circumstances, or reasons "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. (n.1). One of these circumstances requires that the defendant suffer from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. (n.1(A)(ii)(I)).

To the extent Defendant's arguments are based on a generalized risk of contracting COVID-19, this is not an extraordinary and compelling reason warranting early release. As the Third Circuit reasoned in United States v. Raia, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." 954 F.3d 594, 597 (3d Cir. 2020). If it did, every inmate would have a justification for compassionate release. That is, "speculation as to whether COVID-19 will spread through Defendant's detention facility…, whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release." United States v. Shah, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying compassionate release where defendant claimed diabetes and hypertension, but facility had no cases).

Defendant is 46 years old and the extensive medical records he provides show that he is

---

Court would still find that Defendant has not identified extraordinary and compelling reasons warranting a sentence reduction.

receiving careful treatment of his conditions while in BOP and that his conditions appear to be well controlled. Although Defendant's medical conditions require monitoring and treatment, he has not shown that they qualify as "extraordinary and compelling reasons" to reduce his sentence or that he has a serious medical condition that substantially diminishes his ability to provide self-care within a correctional facility. This is particularly true where none of his conditions have been identified by the CDC as conditions known to increase the risk of severe illness from COVID-19. Rather, the CDC lists moderate to severe asthma, hypertension, and an immunocompromised state from the use of corticosteroids as medical conditions that "might" increase the risk for severe illness from Covid-19. Available at: www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant's asthma appears to be mild, not moderate to severe, so it does not meet even the CDC standards for a condition that "might" increase his risk from Covid-19. See (Doc. No. 213-3 at 184–85). Defendant's March 2019 transfer documents indicated that his sarcoidosis was "[c]ontrolled with low dose steroids" and that his hypertension was "[c]ontrolled." (Id. at 81). In fact, Defendant denied a history of hypertension on March 11, 2019. (Id. at 75, 173).

    Defendant relies largely on his sarcoidosis diagnosis to support his motion. Defendant has submitted an unsworn statement from a medical doctor, Dr. Kelly O'Brien, in which Dr. O'Brien opines that because sarcoidosis "is uncommon, it was not on the official CDC list" of high-risk preexisting conditions determined by the CDC for poor outcome, but that it "would definitely be identified as high risk." (Doc. No. 213-2, at 3). Defendant notes that a 2019 chest x-ray showed some fibrosis related to the sarcoidosis. Defendant had a rheumatology examination at the end of 2019, and it was recommended that he begin a weekly low dose treatment of methotrexate. (Doc. No. 213-4 at 39, 47). In July 2020, Defendant's pulmonary function test showed "isolated reduced DLCO with decline diffusion capacity compared to prior PFTs," and his dosage of prednisone was

5

increased. (Doc. No. 213-4 at 1).

In response to Defendant's medical evidence regarding sarcoidosis, the Government has cited to a preliminary study of the impact of Covid-19 on persons with sarcoidosis, finding that sarcoidosis presents only a slightly increased risk of contracting Covid-19 and that the outcomes associated with Covid-19 were generally good for persons with that condition. See David Melamed, Sarcoidosis Does not Increase Risk of Worse COVID-19 Outcomes, Early Survey Data Show, www.sarcoidosisnews.com/2020/05/18/sarcoidosis-does-not-increase-risk-worse-covid-19-outcomes-early-survey-data/.[3] A diagnosis of sarcoidosis does not necessarily establish an "extraordinary and compelling" circumstance warranting compassionate release. See United States v. Brown, No. 3:16CR209-MOC, 2020 WL 2926472, at **1–2 (W.D.N.C. June 3, 2020) (denying compassionate release to inmate with hypertension, diabetes, and pulmonary sarcoidosis); United States v. Buchanan, No. 3:18cr199, 2020 WL 5026849, at *2 (E.D. Tenn. Aug. 24, 2020) (denying compassionate release to inmate diagnosed with sarcoidosis and hypertension); United States v. Mayfield, Crim. No. 07-801, 2020 WL 3604090, at **2–3 (D.N.J. July 2, 2020) (denying motion for compassionate release based on sarcoidosis even with approaching release date); United States v. Barnes, No. 5:17cr313, 2020 WL 4760137, at *2 (E.D.N.C. Aug. 17, 2020) (assuming, without deciding, that inmate's sarcoidosis coupled with the pandemic was an extraordinary circumstance, denying compassionate relief based on the Section 3553(a) factors); cf. United States v. Williams, No. 5:19cr342, 2020 WL 2404680, at *1 (E.D.N.C. May 12, 2020) (denying pre-trial release to detainee with asthma, COPD, congestive heart failure, and hypertension). Although some courts have granted relief to inmates with sarcoidosis, the individual circumstances were different from

---

[3] See also Sarc Fighter: Living with Sarcoidosis and other rare diseases, Episode 9 "COVID-19 & Sarcoidosis: What are the real risks?", John Carver & Dr. Bob Baughman (www.stopsarcoidosis.org/covid19/podcast (May 5, 2020, esp. at 33:13 to 33:47)).

Defendant's.  Unlike the inmate in United States v. Van Cleave, No. CR03-247, 2020 WL 2800769, at *7 (W.D. Wa. May 29, 2020), who was in the "unique position of having less than five months of imprisonment remaining, on a nearly twenty-year sentence," Defendant seeks a sentence reduction of over three years.  And, unlike the inmate in United States v. Croft, No. 95-496-1, 2020 WL 3871313, at **2, 4 (E.D. Pa. July 9, 2020), Defendant has not shown that he has tumors on his lungs, is over 60 years old, or has been a "model inmate."  Finally, the Court notes that, as of October 5, 2020—the date the Government filed its response—USP Allenwood had four inmates who had tested positive for Covid-19 and one staff member who had tested positive and who has recovered.  Defendant has not shown that he is more at risk of contracting COVID-19 while incarcerated at USP Allenwood than he would be in the general population if released.  In sum, the Court finds Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under Section 3582(c) based on his conditions.

    The Court finds that even if Defendant could show that his medical conditions constitute extraordinary and compelling reasons, he is still not entitled to sentence reduction in light of the factors set forth in 18 U.S.C. § 3353(a).  Defendant's offenses were violent—he was part of four, armed bank robberies.  Moreover, Defendant began robbing banks again only three months after he finished serving his sentence for four prior bank robberies and while he was on supervised release for those offenses.[4]  (PSR at ¶ 71).  Before that, he attempted to run down a police officer who was trying to arrest him on drug charges.  (Id. at ¶ 70).

    Defendant's behavior in prison also shows that he still presents a risk to the public, as he

---

[4] Defendant's suggestion that the use of prior convictions to increase his sentence should be mitigated by his age at the time of his offenses does not support a sentence reduction, particularly where he served a significant sentence for his four prior robbery offenses, but that sentence did not deter him from committing four more robberies, this time armed, just months after being released from prison.

7

has committed numerous disciplinary infractions in prison. (Gov. Ex. 3). On August 20, 2020, he refused a work or program assignment and refused to obey an order. (Id.). Nine days earlier, he also refused a work or program assignment. (Id.). In August 2018, Defendant assaulted two other inmates. (Id.). In September 2017, Defendant admitted fighting with another inmate following a disagreement over a television show. (Id.). Before that he had disciplinary actions for possessing a dangerous weapon, fighting with another person (three times), misusing medication, lying or falsifying a statement, possessing intoxicants (twice), using phone or mail without authorization, refusing a drug or alcohol test, and refusing to obey an order. (Id.). According to BOP, Defendant has a high security classification and a high PATTERN/recidivism risk score.

Additionally, Defendant's release plan presents some concerns, as the sister that the Government agreed not to prosecute as part of Defendant's plea agreement resides at the house where he is planning to stay. See (Plea Agrmt. at ¶¶ 1–2; Doc. No. 213-8 at ¶ 4). It is unclear what type of risk his contact with her might present. (Doc. No. 213-8). Nor does Defendant present concrete plans for how he would obtain medical treatment and prescriptions for the conditions that he has if he is released, as opposed to the treatment that he is receiving in BOP at government expense. Moreover, Defendant's suggestion that he should be released directly to his family for a two-week quarantine at home with his parents who are over 70 years old and his sister, who may or may not work outside the home, ignores the risk that he could present to his family. In sum, given all of the foregoing circumstances, Defendant has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the Section 3553(a) factors.

Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

8

Case 3:01-cr-00151-MOC-DCK   Document 230   Filed 10/26/20   Page 8 of 9

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 213), is **DENIED**. The Government's Motion to Stay, (Doc. No. 222), is **DENIED** as moot.

Signed: October 26, 2020

Max O. Cogburn Jr
United States District Judge